**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| DAPHNE MCKINNEY, | * |
|          Plaintiff | * |
| | * CIVIL NO.  3:06-CV-02055 (WWE) |
| V. | * |
| | * |
| DEPARTMENT OF TRANSPORTATION | * |
| FOR THE STATE OF CONNECTICUT, | * |
| AND LISA TILUM, MICHAEL SANDERS | * |
| AND DENNIS JOLLY, KATHLEEN | * |
| KARWICK and VICKI ARPIN in their | * |
| individual capacities | * |
|          Defendants | * JULY 7, 2008 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CORRECTED SECOND AMENDED COMPLAINT

**FIRST COUNT**:

1.      This is an action for money damages to redress the deprivation by the defendant, through its agents, servants and/or employees, of the rights secured to the plaintiff by the Constitution and laws of the United States, as well as those of the State of Connecticut.  Defendant, through its agents, servants and/or employees, were responsible for violating plaintiff's federal and state statutory rights, and thereby improperly deprived her the freedom and liberty afforded to all citizens of this State and Country, without any cause, justification or excuse.

2.      Jurisdiction in this court is invoked under the provisions of the Judicial Code at 28 U.S.C. Sections 1331 and 1343, the Civil Rights Acts of 1964 and 1991,  Title VII thereof and Article I, Section 1 and 10 of the Connecticut Constitution which confers pendent jurisdiction upon this court with respect to any cause of action under state law.

2

3.     During all times mentioned herein, the plaintiff, Daphne McKinney ("plaintiff"), was a citizen of the United States, residing within the State of Connecticut, County  of Hartford, City of Hartford.  The plaintiff is African American of race and black of color.

4.     At all times mentioned herein, the defendant, State of Connecticut, Department of Transportation (the "defendant" or "DOT") is an agency which has a stated mission of providing a safe, efficient and cost-effective transportation system to the general public which is designed to meet the needs of its users. DOT employs well over 500 persons within the State of Connecticut.

5.     On or about December 8, 2005, the plaintiff entered the work area of another employee, Celeste Martires, who had given the plaintiff her personal keys.

6.      As soon as the plaintiff entered the work area, she was verbally assaulted and physically restrained by Lisa Tilum, ("Tilum") who is the Supervising Engineer Planner for the defendant, and who is Caucasian of race and white of color.  Ms. Tilum began yelling at the plaintiff in a threatening and intimidating manner screaming "Don't touch that cabinet, give me those keys.  I'm going to get Mike."   Ms. Tilum was referring to Mr. Michael Sanders ("Sanders") who is the Transit Administrator of the Bureau of Public Transportation ("Bureau"). Mr. Sanders is Caucasian of race and white of color.  The plaintiff was attempting to go into the cabinet to retrieve a package of oatmeal.

7.     Upon plaintiff returning to Ms. Martires' work area to return food she had borrowed, Ms. Tilum followed her, stared at her and asked what was in

her hand.  At this time, Ms. Tilum blocked the route of egress leading from the work area and the plaintiff was effectively trapped in the work area against her will.

8.     Later that same day, the plaintiff was wrongfully accused of having state property in her possession when what she actually had was a set of *personal* keys given to her by Ms. Martires.  Cindy Baigert, a co-worker was a witness to the defendant's knowingly false accusation against the plaintiff.

9.     The aforedescribed matter was investigated by Deputy Commissioner Urso's office, but when the plaintiff attempted to get a copy of said investigation pursuant to the Freedom of Information Act, her request was denied. Following this incident, Sanders sent out an email throughout the Bureau indicating he intended to bring in a locksmith and everyone was required to surrender the keys to their desks and file cabinets.

10.     On or about December 19, 2005, there were three (3) anticipated vacancies for Transportation Supervising Planner positions at the defendant. While the plaintiff was qualified for this position, she overheard Dennis Jolly, ("Jolly") who is Transit Manager in the Bureau, and who is Caucasian of race and white of color, indicate that she "had no chance in Hell of getting it!"

11.     Following these incidents, the plaintiff continued to be harassed and the target of repeated retaliation.[1]  In January 2006, Jolly sent an email placing Jim Stutz on a project with the plaintiff.  Plaintiff requested a meeting with Sanders to discuss why Mr. Stutz was constantly being placed on her projects.

---

[1]     Refer to ¶13 hereinafter.

4

At this time, plaintiff also requested a service rating.[2]

12.    In February 2006, plaintiff was interviewed by Deputy Commissioner Urso's office due to ongoing problems in the Regulatory Compliance Unit, as well as the aforedescribed incident.  Plaintiff again attempted to obtain copies of the notes of said interview, but was unable to obtain them.

13.    In or about March 2006, it became widely known throughout the defendant that Brian Chapman had preliminarily prevailed in a case previously filed by the plaintiff against him personally.   In addition, it was well known throughout the Bureau that the plaintiff had filed several complaints with the Affirmative Action Office of the DOT, the Commission on Human Rights and Opportunities, ("CHRO") as well as state and federal complaints.   Ms. Tilum began to bully and harass the plaintiff by laughing, glaring, grinning and smiling at the plaintiff in the office and in the bathroom.   Plaintiff asserts this was Ms. Tilum's way of responding to and retaliating against the plaintiff for often engaging in protected activity, namely objecting to discrimination in her place of work.   The plaintiff thereafter repeatedly reported Ms. Tilum's behavior to Jolly, but all he would do was to  throw up his arms and ask "What can I do?"

14.    On or about March 27, 2006, plaintiff requested copies of her service ratings so that she would be able to apply for another job as she was no longer able to psychologically handle the constant abuse, ridicule, hostile work environment, discrimination, retaliation, and unprofessional behavior directed

---

[2]     It should also be noted that plaintiff received  service ratings only for the years of 2003 and 2004 since 2000.

toward her in the office.

15.     But for the plaintiff's race and color, she would not have been treated in the harassive, discriminatory, retaliatory manner as aforedescribed.

16.     The fact of the matter is, there has been a pattern and practice of the defendant to treat minorities, including the plaintiff, in the aforedescribed demeaning and discriminatory manner.  One by one the minority employees on staff at the DOT have faced disparate treatment and open hostility, particularly within the Bureau.  At this time, out of approximately forty (40) employees, the only minority employees remaining within the Bureau are Ms. Martires and Dennis King.[3]

17.     The plaintiff has repeatedly noticed a pattern and practice of discrimination within the workplace, has experienced a hostile work environment, disparate treatment and retaliation created and/or perpetrated by the agents, servants and/or employees of the defendant, particularly with respect to those within management positions in the Bureau, which employs the Transportation Planners.

18.     On or about June 2, 2006 a Complaint Affidavit was filed with the Commission on Human Rights and Opportunities, ("CHRO"), as well as the Equal Employment Opportunities Commission, ("EEOC") alleging discrimination by the defendant due to the plaintiff's race which is African-American and her color which is black.

---

[3]     Ms. Martires has previously filed a CHRO Complaint, No. 0510168 and currently has a Complaint asserting discrimination in Federal Court, No. 3:05CV1371 (CFD).

6

19.     A release of jurisdiction letter was issued by the CHRO and EEOC on October 24, 2006 and December 20, 2006, respectively, giving plaintiff the right to commence the instant action.

20.     The acts of the agents, servants and/or employees of the defendant were in the nature of discriminatory and harassive conduct in substantial part due to her race and color, and, therefore, were in violation of 42 U.S.C. Section 2000e et seq., (hereinafter referred to as "Title VII").

21.     The actions of the defendant, through its agents, servants and/or employees, as manifested by the ongoing harassment of the plaintiff, as well as the disparate treatment afforded her in relation to other employees who were Caucasian of race and white of color, amounted to discriminatory employment practices being perpetrated against the plaintiff which constituted a hostile work environment, as well as disparate treatment, in direct violation of Title VII of the Civil Rights Act, as defendant's actions were due to plaintiff's race and color.

22.     The acts of the defendant, through its agents, servants and/or employees, violated the plaintiff's rights accorded under 42 U.S.C. Section 1981.


COUNT TWO:   [Retaliation]

1-21.   Paragraphs 1 through 21 of the First Count are hereby incorporated by reference and made Paragraphs 1 through 21 of the Second Count, as if fully set forth herein.

22.     The plaintiff has been subjected to a hostile work environment and disparate treatment because of the fact that she has openly

7

opposed discrimination in the work place relative to her race and color.

23.     Upon the plaintiff filing either internal complaints with the Affirmative Action Office, the CHRO, or state or federal court, in each instance, she was retaliated against, culminating in the defendant allowing its employees to openly provoke, harass, antagonize and intimidate the plaintiff on a daily basis.

24.     The actions of the defendant, through its agents, servants and/or employees, as manifested by the ongoing harassment of the plaintiff, as well as the disparate treatment afforded her in relation to other employees who were Caucasian of race and white of color, amounted to discriminatory employment practices perpetrated against the plaintiff which constitute clear and unequivocal retaliation in violation of 42 U.S.C. §§1981 and 2000, as defendant's actions were due to plaintiff engaging in protected activity.


COUNT THREE:

1-21.  Paragraphs 1 through 21 of the First Count are hereby incorporated by reference and made Paragraphs 1 through 21 of the Third Count, as if fully set forth herein.

22.     At all times mentioned herein, the co-defendant Tilum, was and is Supervising Engineer Planner of the defendant.  Also, co-defendant, Sanders was and is the Transit Administrator of the Bureau of Public Transportation of the defendant.   Co-defendant, Jolly was and is the Transit Manager at the Department of Transportation.  Co-defendants, Tilum, Sanders and Jolly are each being served in their individual capacity.

8

23.     On at least two (2) occasions, and in furtherance of the hostile work environment to which plaintiff was continuously subjected, Tilum quite misleadingly and stereotypically publicly characterized plaintiff's conduct as being "intimidating," "belligerent" and "threatening."

24.     Notwithstanding repeated requests from the plaintiff to intervene, co-defendant Sanders refused to do so, and permitted co-defendant Tilum to openly harass, provoke, intimidate and antagonize the plaintiff.

25.     Further, co-defendants Sanders, Jolly, Tilum and Karwick refused to speak to plaintiff or acknowledge her presence in the Unit which set the tone for the rest of the staff within the Bureau.  Moreover, Sanders often used offensive language in front of her and said things such as "Maybe you'd be happier in a place with your own kind so you don't have to be so bitchy" and further told her she would never go any further in her career at the Department of Transportation. Co-defendant Sanders isolated plaintiff by not including her in meetings or offering her the same opportunities as her peers.

26.     On or about January 9, 2006, co-defendant Sanders refused to give plaintiff a service rating, to which she was entitled, according to her collective bargaining contract.

27.     Co-defendant Jolly continually harassed plaintiff, and attempted to set  her up by doing things such as placing meetings on Ms. McKinney's calendar without first notifying her; or asking her to reconcile a discrepancy when it was later determined that she had nothing to do with the project.  Moreover, whenever plaintiff brought any concerns to co-defendant Jolly, he responded with a cavalier

and aloof attitude and was not responsive in the least about her concerns.  As a general practice, co-defendant Jolly responded to plaintiff in a sarcastic, condescending and demeaning manner.

28.   The discriminatory acts of the co-defendants as aforedescribed were done in their individual capacities in violation of **42 U.S.C. Section 1981**, and therefore, the defendant is liable to the plaintiff pursuant to **§ 42 U.S.C. § 1983** of the Civil Rights Act of 1991, as amended.

29.   The aforedescribed conduct of the defendant, through its agents, servants and/or employees, was motivated, at least in substantial part, by plaintiff's race which is African American and her color which is black.

**COUNT FOUR:   [WRONGFUL TERMINATION]**

1-21.  Paragraphs 1 through 21 of the First Count are hereby incorporated by reference and made Paragraphs 1 through 21 of the Fourth Count, as if fully set forth herein.

22.   Kathleen Karwick ("Karwick") who is white of color and Caucasian of race, worked in the defendant's Human Resources Department and was, throughout the events described herein, the plaintiff's personnel representative.

23.   Vicki Arpin, ("Arpin") who is white of color and Caucasian of race, worked in the defendant's Personnel Department and was, through the events described herein, the Personnel Administrator who made the decision to terminate the plaintiff.

24.   For months, as early as March 2006, the Complainant was

10

being harassed and bullied by Tilum while employed at the defendant.  She informed her supervisor, Jim Stutz ("Stutz") of this fact on April 27, 2006. Thereafter, she continued to complain to Mr. Stutz about the bullying she was experiencing at the hands of Tilum.  In fact, the plaintiff filed a prior CHRO complaint, dated June 2, 2006  against Tilum, as well as the defendant, because of the unchecked bullying to which she was subjected.  A formal complaint was also filed with the defendant's Affirmative Action Office on June 23, 2006.

25.    Despite the timely complaints made by the plaintiff and an internal "investigation" which was thereafter conducted, the plaintiff did not feel safe at work. Soon thereafter, an incident occurred on or about July 7, 2006, wherein the plaintiff was, again, in apprehension of being physically attacked by Tilum.

26.    More specifically, on July 7, 2006 at approximately 11:46 a.m., the plaintiff was standing at a desk near her office utilizing the paper cutter.  Tilum walked over to the copy machine nearby and, as she took her papers from it, almost hit the plaintiff in the head.   Plaintiff immediately protested to her supervisors, Sanders and Jim Boice, that Tilum's actions were in the nature of an intentional provocation.  Sanders discriminatorily and demeaningly responded by chiding the plaintiff for "disrupting" the office.

27.    As a result of her frustration with the situation, on July 10, 2006, plaintiff forwarded an email to Steven E. Korta, Commissioner of the DOT, inquiring as to what her options were when interacting with Tilum, both on and off state property.

28.    The email in which plaintiff inquired of Commissioner Korta as to

11

her options in dealing with Tilum was also forwarded, in a confidential manner, to Stephen Livingston, plaintiff's Union Representative and her personnel representative, Karwick.

29.    The plaintiff, *in a hypothetical manner*, inquired in said email about the alternatives available to her with respect to the bullying she was experiencing at the hands of Tilum.   At no time did the plaintiff communicate, either directly or indirectly, with Tilum.

30.    As a result of receipt of plaintiff's email, Karwick prodded the plaintiff to further clarify her intentions regarding confronting Tilum; plaintiff unwittingly complied.

31.    At no time was the plaintiff advised by Karwick that there was a specific policy at DOT regarding plaintiff's ability to actually confront the person who was bullying her.

32.    Subsequent thereto, however, Karwick advised Tilum of the plaintiff's inquiry regarding her options in dealing with Tilum's harassive and abusive behavior

33.    Instead, on or about July 12, 2006, a Fact Finding hearing was held concerning the plaintiff's alleged threat to a co-worker, namely Lisa Tilum. Consequently, plaintiff was placed on administrative leave and several days later, a warrant was issued for plaintiff's arrest, charging her with threatening and harassment as against Tilum.

34.    In October 2006 a Loudermill hearing was held concerning the plaintiff's continued employment with the defendant.

12

35.     On or about October 24, 2006, the plaintiff received a letter from the defendant indicating, effective November 7, 2006, she would be terminated from her employment with the DOT for violating various policies ostensibly designed to prevent violence within the workplace.  Arpin was the individual who, by her own admission, made the decision to terminate the plaintiff.

36.     On December 14, 2006, plaintiff filed a CHRO complaint regarding the aforedescribed termination.

37.     On June 25, 2007, plaintiff received a Release of Jurisdiction letter from the CHRO.

38.     As a direct result of the defendant's acts, through its agents, servants and/or employees, in its failure to provide the plaintiff with either a verbal or written warning as it would customarily do where similarly situated white, Caucasian employees have been terminated, resulted in plaintiff sustaining severe emotional, psychological, financial and/or physical injuries and damages stemming from the defendant's wrongful acts, all to her permanent detriment and loss.

39.     The defendant's failure, through its agents, servants and/or employees, to adhere to its own anti-bullying policy, whereby plaintiff should have been permitted to not only ask hypothetical questions about her options regarding Tilum's intimidating conduct, but also to confront her.   Instead, plaintiff was wrongfully discharged due to the discriminatory, harassive, improper and illegal actions of the defendant, through its agents, servants and/or employees in violation of Title VII and 42 U. S. C. §1981.

13

**COUNT FIVE:   [42 U.S.C. §1981/1983]**

1-38.    Paragraphs 1 through 38 of the Fourth Count are hereby incorporated by reference and made Paragraphs 1 through 38 of the Fifth Count, as if fully set forth herein.

39.    The discriminatory acts of the co-defendants Karwick and Arpin as aforedescribed was done in their individual capacity in violation of **42 U.S.C. Section 1981**, and therefore, the defendant is liable to the plaintiff pursuant to **§ 42 U.S.C. § 1983** of the Civil Rights Act of 1991, as amended.

40.    The aforedescribed conduct of the defendant and co-defendants, through their agents, servants and/or employees, was motivated, at least in substantial part, by plaintiff's race which is African American and her color which is black.


**COUNT SIX:   [RETALIATION RE TERMINATION]**

1-38.    Paragraphs 1 through 38 of the Fourth Count are hereby incorporated by reference and made Paragraphs 1 through 38 of the Sixth Count, as if fully set forth herein.

39.    The wrongful termination of the plaintiff was a clear and unequivocal violation of the anti-retaliation provision of Title VII as her discharge was as a result of her repeatedly availing herself of her statutory right to objection to and openly oppose to ongoing harassment, discrimination, disparate treatment and a hostile work environment.

14

**COUNT SEVEN: [INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS]**

1-21.  Paragraphs 1 through 21 of the First Count are hereby incorporated by reference and made Paragraphs 1 through 21 of the Seventh Count, as if fully set forth herein.

22.    The defendant, by taking the aforedescribed adverse employment actions against the plaintiff, through its agents, servants and/or employees, intended to inflict emotional distress upon her or knew or should have known that emotional distress was the likely result of its conduct.

23.    The aforedescribed conduct by the defendant, through its agents, servants and/or employees, was extreme and outrageous and caused the plaintiff severe emotional distress and trauma, sleeplessness, loss of appetite, loss of her employment, overly burdensome financial hardships, damage to her relationship with his family and friends, as well as damage to her self-esteem, sense of self-worth.

24.    The aforedescribed acts of the defendant, through its agents, servants and/or employees, constituted the intentional infliction of emotional distress.

15

<u>COUNT EIGHT</u>:  [NEGLIGENCE/CARELESSNESS]

1-21.  Paragraphs 1 through 21 of the First Count are hereby incorporated by reference and made Paragraphs 1 through 21 of the Eighth Count, as if fully set forth herein.

22.      During the plaintiff's employment, the agents, servants and/or employees of the defendant negligently subjected the plaintiff to severe and repeated harassment.

23.  The defendant by and through its agents, servants, and/or employees, failed to exercise reasonable care in the training of and the supervision of its employees with respect to the overall performance of their duties in one, some, or all of the following ways:

a.     It failed to prevent or adequately supervise its agents, servants and/or employees  from engaging in the aforedescribed harass-ment of the plaintiff;

b.     It allowed its agents, servants and/or employees to continue their harassment of the plaintiff, despite plaintiff's repeated complaints and corresponding requests that said harassment immediately cease and desist;

c.     It failed to address, intervene in, stop or otherwise promptly remedy the harassment by co-defendant Tilum with respect to which it was already on notice;

d.     It failed to take adequate, prompt, remedial steps to stop the harassment against the plaintiff, even after she repeatedly

16

complained of said harassment;

e.    It failed to adequately, professionally and/or properly train and/or counsel its agents, servants and/or employees, particularly the co-defendant Tilum, against acting in an intimidating, demeaning and physically assaultive manner, with respect to a subordinate employee such as the plaintiff; and

f.    It failed to properly monitor the conduct of its agents, servants and/or employees, particularly the co-defendant, Tilum, sufficient to protect subordinate employees such as the plaintiff, against intimidating, demeaning and physically provocative and/or assaultive behavior as aforedescribed.

24.    As a result of the negligence and carelessness of the defendant, through its agents, servants and/or employees, the plaintiff was seriously injured as she suffered and will continue to suffer pain, mental anguish, depression, anxiety, a sense of deep humiliation and embarrassment, low self-esteem, and a substantial loss of income for an extended period of time.

17

**WHEREFORE**, the plaintiff claims judgment against the defendants as follows:

a.   Compensatory damages in an amount this court shall consider just and fair;

b.   Punitive damages in an amount this court shall consider just and fair;

c.   Attorney's fees and the reimbursement of costs of the instant action; and

d.   Reimbursement of back wages and re-establishment of any and all employee benefits to which plaintiff would otherwise have been entitled had she not been wrongfully terminated; and

d.   Such other relief as this court shall consider to be just, fair and equitable.

PLAINTIFF, DAPHNE MCKINNEY


BY:____/s/_____
Law Office of
W. Martyn Philpot, Jr., LLC
409 Orange Street
New Haven, CT  06511-6406
Tel. No. (203) 624-4666
Federal No. ct05747
Her Attorneys

The plaintiff hereby requests a trial by jury.

18

## CERTIFICATION

I hereby certify that on this 7th day of July 2008, a copy of the foregoing Plaintiff's Corrected Second Amended Complaint was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

_____/s/_____
W. Martyn Philpot, Jr.

\employ\mckinney.corsecondamdcpt