## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAPHNE McKINNEY, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 3:06-cv-2055 (WWE) |
| | : | |
| DEPARTMENT OF TRANSPORTATION FOR | : | |
| THE STATE OF CONNECTICUT, LISA | : | |
| TILUM, MICHAEL SANDERS, DENNIS | : | |
| JOLLY, KATHLEEN KARWICK and VICKI | : | |
| ARPIN, in their individual capacities, | : | |
| Defendants. | : | |

### RULING ON PLAINTIFF'S MOTION FOR RECONSIDERATION

Plaintiff Daphne McKinney moves (Doc. #138) the Court to reconsider its ruling granting defendants' motion for summary judgment (Doc. #136) issued on December 2, 2009.  For the reasons that follow, the Court will grant plaintiff's motion for reconsideration and, upon review, will adhere to its previous ruling in part, vacate its ruling in part and deny summary judgment in part.

### BACKGROUND

The underlying facts and the identities of the parties are set forth in the Court's memorandum of decision issued on December 2.  In its ruling, the Court dismissed plaintiff's complaint in its entirety.  As to the specific issues that plaintiff now addresses in her motion for reconsideration, the Court (1) dismissed plaintiff's claims related to her termination under Title VII and 42 U.S.C. § 1983 because of the lack of information regarding the comparators offered by plaintiff; (2) construed counts three and five as asserted against defendant Department of Transportation, not the individual defendants, and therefore dismissed those counts; and (3) dismissed plaintiff's claim

1

for negligent supervision as not cognizable in the context of a continuing employment

relationship.

## DISCUSSION

A motion for reconsideration may be based solely upon "matters or controlling

decisions which counsel believes the Court overlooked in the initial decision or order."

Local R. Civ. P. 7(c)(1).  Such a motion should be granted only where the Court has

overlooked facts or precedents which might have "materially influenced" the earlier

decision.  Park South Tenants Corp. v. 200 Cent. Park South Assocs. L.P., 754 F.

Supp. 352, 354 (S.D.N.Y. 1991).  The movant's burden is made weighty to avoid

"wasteful repetition of arguments already briefed, considered and decided."  Weissman

v. Fruchtman, 124 F.R.D. 559, 560 (S.D.N.Y. 1989).

## I.    Discrimination Claims

In its ruling, the Court stated that "Seldon's affidavit does not contain any

information about the racial identities of any of the potential comparators.  Neither do

the incident reports or other support materials."  Buried deep among plaintiff's almost-

one hundred exhibits was exhibit GGG, which identified the comparators' racial and

gender identities.  This exhibit was not cited in plaintiff's objection to summary judgment

or in her Rule 56(a)(2) statement.  While it was listed in plaintiff's list of exhibits, it was

not referred to anywhere in the papers.  A court should not need to search through the

voluminous record to find evidence that plaintiff did not see fit to cite in her materials.

See Albrechtsen v. Board of Regents of Univ. of Wisconsin Sys., 309 F.3d 433, 436

(7th Cir. 2002) ("Judges are not like pigs, hunting for truffles buried in the record.").

Because plaintiff has now indicated the racial identities of the various comparators, the

2

Court will consider them in its analysis of plaintiff's Title VII and section 1983 claims, as appropriate.

Plaintiff claims that the Court misconstrued the Corrected Second Amended Complaint by reading it in a "hypertechnical" fashion.  The Court reminds plaintiff that the use of the term "defendant's" in a multi-defendant case is, by definition, imprecise and confusing.  Further, the phrasing of counts three and four of the complaint, reproduced in footnotes of seven and eight of the Court's ruling, demonstrates that the complaint is not the example of a clear and concise pleading.  In an abundance of caution, however, the Court will construe counts three and five as asserted against the individual defendants and count four as asserted against the DOT.

Counts three and five assert that the individual defendants violated plaintiff's rights under section 1983 by subjecting her to a hostile work environment (count three) and by wrongfully terminating her (count five).  Count four alleges that defendant DOT terminated plaintiff on account of her race in violation of Title VII, and count five alleges that defendants Karwick and Arpin violated plaintiff's rights under section 1983 by terminating her on account of her race.[1]

As part of her section 1983 claims, plaintiff must show that defendants "directly participated in the violation [or that they] failed to remedy the violation after learning of it through a report or appeal," Wimmer v. Suffolk County Police Dep't, 176 F.3d 125, 136 (2d Cir. 1999), or that they exercised "gross negligence in managing subordinates." Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  Personal involvement is a prerequisite

---

[1]     In its ruling, the Court dismissed all counts against Karwick for lack of personal jurisdiction because plaintiff had failed to properly serve Karwick.  Plaintiff does not now seek reconsideration of this aspect of the ruling.

to the assessment of damages, and respondeat superior is an inappropriate theory of

liability.  See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).  The Second Circuit

Court of Appeals has held that an individual defendant may be held liable pursuant to

section 1983 as a supervisor in several circumstances:

> The defendant may have directly participated in the
> infraction....  A supervisory official, after learning of the
> violation through a report or appeal, may have failed to remedy
> the wrong....  A supervisory official may be liable because he
> or she created a policy or custom under which unconstitutional
> practices occurred, or allowed such a policy or custom to
> continue....  Lastly, a supervisory official may be personally
> liable if he or she was grossly negligent in managing
> subordinates who caused the unlawful condition or event....

Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986).

### A.    Count Three

Count three of plaintiff's operative complaint alleges that defendant Tilum,

Sanders and Jolly subjected plaintiff to a hostile work environment in violation of section

1983 on account of plaintiff's race.

The Court of Appeals for the Second Circuit has commented that the elements

for a claim under Title VII and a section 1983 equal protection claim are "generally the

same ... and the two must stand or fall together."  See Feingold v. New York, 366 F.3d

138, 159 (2d Cir. 2004).  The Court dismissed plaintiff's Title VII hostile work

environment claims on their merits and will not revisit the substantive analysis of a

hostile work environment claim here.  Because there is insufficient evidence before the

Court for a jury to conclude that the incidents complained of by plaintiff rose to the level

required under the law or were related to plaintiff's race, summary judgment is

appropriate on this count.

**B.      Counts Four and Five**

Because the termination claims of counts four and five are evaluated under the same standard, the Court will address them together.  Plaintiff alleges in count four that defendant DOT violated her rights guaranteed by Title VII and in count five that defendant Arpin violated her rights under section 1983.

To establish that she was terminated on the basis of her race in violation of section 1983, plaintiff must demonstrate that her termination violated the underlying law – Title VII.  Title VII prohibits an employer from treating an individual less favorably on account of her gender, race, color or national origin.  42 U.S.C. § 2000e-2; Feingold, 366 F.3d at 150.  Where there is no direct evidence of discrimination, a Title VII claim is analyzed under the shifting burdens described in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804 (1973).  Plaintiff must first establish a prima facie case of discrimination.  Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253-54 (1981).  Defendants must then articulate a legitimate, non-discriminatory reason for taking the actions that establish the prima facie case.  The reason provided must be both "clear and specific."  Meiri v. Dacon, 759 F.2d 989, 997 (2d Cir. 1985).  If defendants satisfy this requirement, plaintiff must show that defendants' proffered reason is a pretext for discrimination.  Plaintiff is not required to prove that the prohibited motivation was the sole or even the principal factor in the decision, or that the employer's proffered reasons played no role in the employment decision, but only that those were not the only reasons and that plaintiff's protected status contributed to the employer's decision.  Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 78 (2d Cir. 2001).  At all times, plaintiff bears the burden of persuading the trier of fact that

5

defendant intentionally discriminated against her.  St. Mary's Honor Ctr. v. Hicks, 509

U.S. 502, 507 (1993).

A prima facie case under Title VII requires that plaintiff show that (1) she is a

member of a protected class; (2) she was qualified for the position; (3) she suffered an

adverse employment action; and (4) the adverse action took place under circumstances

giving rise to an inference of discrimination.  Petrosino v. Bell Atl., 385 F.3d 210, 226

(2d Cir. 2004).  At this stage, plaintiff's burden is minimal.  Fisher v. Vassar College,

114 F.3d 1332, 1335 (2d Cir. 1997).

If plaintiff establishes a prima facie case, the burden of production turns to

defendants to establish a legitimate, non-discriminatory reason for terminating plaintiff.

Plaintiff must then prove by a preponderance of the evidence that the supposed-

legitimate reason is actually a pretext for discrimination.  St. Mary's Honor Ctr., 509

U.S. at 515.

The Court will assume, for purposes of ruling on this motion, that plaintiff was

qualified for her position and that her termination was an adverse employment action.

Plaintiff seeks to draw an inference of discrimination by comparing her situation with the

situations of similarly situated individuals outside the protected class who were treated

differently.

She seeks to prove her case through the use of comparators.  An employee is

deprived of her right to be free of discrimination when she is treated differently from

similarly situated employees on account of her race.  See Harlen Assocs. v. Inc. Vill. of

Mineola, 273 F.3d 494, 499 (2d Cir. 2001).  To succeed on her claim, plaintiff must

demonstrate (1) that she was treated differently from similarly situated individuals

6

(2) because of her race.  Id., 273 F.3d at 499.

     For employees to be similarly situated, they must be similarly situated "in all

material respects."  See Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir.

1997).  In such a case, the circumstances of the plaintiff and the individuals need not

be identical, but there should be a reasonably close resemblance of facts and

circumstances.  Graham v. Long Island R.R., 230 F.3d 34, 40 (2d Cir. 2000); see also

McGuinness v. Lincoln Hall, 263 F.3d 49, 54 (2d Cir. 2001) ("[W]here a plaintiff seeks to

establish the minimal prima facie case by making reference to the disparate treatment

of other employees, those employees must have a situation sufficiently similar to

plaintiff's to support at least a minimal inference that the difference of treatment may be

attributable to discrimination.").  The court should determine whether plaintiff and the

asserted comparators are similar in significant respects by considering whether the

respective individuals had the same supervisors, were subject to the same performance

evaluation and disciplinary standards, and engaged in conduct of comparable

seriousness without any differentiating circumstances.  Lizardo v. Denny's, Inc., 270

F.3d 94, 101 (2d Cir. 2001); Graham, 230 F.3d at 40 ("[T]he standard for comparing

conduct requires a reasonably close resemblance of the facts and circumstances of

plaintiff's and comparator's cases, rather than a showing that both cases are

identical."); Shumway, 118 F.3d at 64.  To determine whether two acts are of

comparable seriousness requires the court to examine "the context and surrounding

circumstances in which those acts are evaluated."  Graham, 230 F.3d at 40.  Ultimately,

whether two employees are similarly situated is a question of fact.  Id. at 43.  "[T]his rule

is not absolute ... and a court can properly grant summary judgment where it is clear

that no reasonable jury could find the similarly situated prong met."  Harlen Assocs.,
273 F.3d at 499 n.2.

Plaintiff contends that Arpin relied on the precedent of Tom Thomches when
determining the appropriate punishment for plaintiff and that this comparison was
inappropriate.  Plaintiff argues that Arpin should have instead looked to the treatment
afforded to David Astarita, Vincent Giardina, Raymond Carson, Stephen Davis, Francis
Dudley, Michael Eason, Harold Emond, Daniel Espositio, Robert Grey, Joseph
DeCosta, Lorenzo Hogan, Steven Puzzo, Linda Thomas, Gary Young, Bennett
Zinkerman, David Deprodocini, Timothy Kelly and James Huntington.  Eason and
Hogan are black males and therefore are inappropriate comparators for plaintiff to rely
upon.

In plaintiff's papers, she addresses in great detail the conduct for which each of
the comparators was punished.  She never states, however, that any comparator was
punished or supervised by Arpin.  The Court of Appeals has recently commented that
the fact that two employees had different supervisors does not preclude finding those
employees to be similarly situated.  See Berube v. A&P, 348 Fed. Appx. 684, 686 (2d
Cir. 2009); see also Julian v. Securitas Sec. Servs. United States, Inc., 2010 U.S. Dist.
LEXIS 38129 (D. Conn. Apr. 19, 2010) (observing that Shumway does not support the
view that employees must have the same supervisor to be similarly situated).
Therefore, it is necessary to examine the comparators' respective actions that
warranted punishment and the standards by which they were punished.

Based on the record before the Court, the Court cannot find as a matter of law
that the comparators were not similarly situated to plaintiff.  It is true that the

comparators' actions differed from plaintiff's.  While defendants try to distinguish between the circumstances that led to each person's punishment, whether these distinguishing circumstances were material and whether, as is the ultimate question, these comparators are similarly situated to plaintiff is a question best not decided on summary judgment.  The Court will, therefore, leave to the jury the question of whether the comparators are sufficiently similarly situated to plaintiff to establish an inference of discrimination.

Defendants have a reasonable explanation for plaintiff's termination, and thus it is left to plaintiff to show that such explanation is pretext for racial discrimination.  The evidence which supports plaintiff's inference of discrimination may also show that defendants' explanation is a pretext for discrimination.  See Reeves v. Sanderson Plumbing Prods., 530 U.S. 133 (2000).  If the comparators are sufficiently similarly situated, the relevant facts may lead a jury to find defendants' reasonable explanation to be pretextual.  Therefore, in light of the evidence before the Court, summary judgment is inappropriate as to plaintiff's Title VII termination claim against the DOT and her section 1983 claim against Arpin as it relates to Arpin's decision to terminate plaintiff.  The Court will grant plaintiff's motion for reconsideration as to these counts, and, upon reconsideration, will deny summary judgment as to counts four and five.

## II.   Negligent Supervision Claim

Plaintiff argues, relying on Gutierrez v. Thorne, 13 Conn. App. 493 (1988) and Roberts v. Circuit-Wise, Inc., 142 F. Supp. 2d 211 (D. Conn. 2001), that a claim for negligent supervision under Connecticut law can be asserted in a continuing employment relationship.  In her complaint, plaintiff's claim of negligent supervision

9

relates to negligent conduct in the course of plaintiff's employment.  It does not relate to her termination.[2]  Plaintiff does not mention her termination in her claim for negligent supervision in her complaint, even though at the time that it was filed, she had not yet been reinstated.  Plaintiff's response to the motion for summary judgment similarly does not discuss conduct in the context of her termination.

The Court will not examine plaintiff's treatment in the context of her termination.  Even if the Court were to review this claim as it relates to her termination, there is no evidence in the record for a jury to conclude that defendants' actions in terminating plaintiff constituted negligent supervision by Arpin or of Arpin by any other defendant.

To the extent that this claim relates to plaintiff's work environment, this Court has found on numerous occasions that "Connecticut bars all negligence-based emotional distress claims occurring within a continuing employment context." Antonopoulos v. Zitnay, 360 F. Supp. 2d 420, 431 (D. Conn. 2005) (addressing negligent supervision claim); see also Grunberg v. Quest Diagnostics, Inc., 2008 U.S. Dist. LEXIS 8205, *25-26 (D. Conn. Feb. 5, 2008) (citing cases); Rosario v. J.C. Penney, 463 F. Supp. 2d 229, 233 n.9 (D. Conn. 2006).  The cases to which plaintiff cites were decided before the Connecticut Supreme Court's decision that established the principle that a negligent supervision claim cannot lie in a continuing employment context and are not on point. See Perodeau v. City of Hartford, 259 Conn. 729, 758-63 (2002).

Finally, the Court's ruling did not address defendants' argument that plaintiff's claim for negligent supervision is barred by sovereign immunity.  At this stage, however,

---

[2]      As noted in the Court's initial ruling, following the filing of the summary judgment papers, an arbitrator reinstated plaintiff to the position from which she had been terminated.

the Court finds that sovereign immunity is yet another bar to plaintiff's claim of negligent supervision.  There is no evidence in the record that defendant DOT waived its sovereign immunity to be sued for negligent supervision.  See Mutts v. S. Conn. State Univ., 2007 U.S. Dist. LEXIS 66996 (D. Conn. Sept. 12, 2007) (finding that state had not waived sovereign immunity defense against negligent infliction of emotional distress).

## III.    Qualified Immunity

The Court did not reach the question of defendants' claims of qualified immunity in its initial ruling.  Now that the Court has found a material issue of fact as to several of plaintiff's claims, the question of qualified immunity must be addressed.

Qualified immunity shields government officials whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).

The test for qualified immunity is twofold.  The threshold question is whether, taken in the light most favorable to plaintiff, the facts demonstrate defendant's violation of plaintiff's due process rights.  The next question is whether that right was clearly established within the specific context of the case.  In other words, the court must consider whether the constitutional right was clear enough so that a reasonable official would understand that her actions would violate that right.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  The Supreme Court recently held that applying the two prong test is no longer mandatory.  Instead, the lower courts "have the discretion to decide whether

11

that procedure is worthwhile in particular cases." <u>Pearson v. Callahan</u>, 129 S. Ct. 808, 818 (2009).

Thus, a qualified immunity defense is established where "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." <u>Tierney v. Davidson</u>, 133 F.3d 189, 196 (2d Cir. 1998).

The doctrine of qualified immunity recognizes that "reasonable mistakes can be made as to the legal constraints on particular ... conduct." <u>Saucier</u>, 533 U.S. at 205. Qualified immunity applies if the official's mistake as to what the law requires is reasonable. <u>Id.</u> It does not apply if, on an objective basis, it is obvious that no reasonably competent official would have taken the actions of the alleged violation. <u>Malley</u>, 475 U.S. at 341. Summary judgment is appropriate when a trier of fact would find that reasonable officials could disagree. <u>Lennon v. Miller</u>, 66 F.3d 416, 421 (2d Cir. 1995).

If the court assumes, <u>arguendo</u>, that plaintiff's rights were violated, it becomes necessary to determine whether a clearly established right was violated by defendants' conduct. <u>See Saucier</u>, 533 U.S. at 207-08 ("[W]e will assume a constitutional violation could have occurred under the facts alleged..., then proceed to the question whether this general prohibition against excessive force was the source for clearly established law that was contravened in the circumstances this officer faced.").

If plaintiff was terminated on account of her race, then defendant Arpin would not be entitled to qualified immunity because the right not to be terminated on account of one's race is a right that is clearly established under the law. The question of what

12

happened in this case is ultimately one for the jury.  At this stage, it would be premature to determine whether qualified immunity applies given the facts of the case.

The only remaining issue for trial is whether plaintiff's termination was on account of her race and, therefore, in violation of her rights under Title VII and section 1983.

## CONCLUSION

For the foregoing reasons, the Court GRANTS plaintiff's motion for reconsideration (Doc. #138) and, upon reconsideration, DENIES defendants' motion for summary judgment (Doc. #94) as to plaintiff's claims under Title VII and section 1983 relating to her termination on account of her race.  The Clerk is instructed to reopen this case.

Dated at Bridgeport, Connecticut, this 6th day of May, 2010.

_____/s/_____
Warren W. Eginton
Senior United States District Judge